NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RLR INVESTMENTS, LLC, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 07-cv-3648 (DMC) |
| | : | |
| TOWN OF KEARNY, ALBERTO G. | : | |
| SANTOS, MAYOR, COUNCIL OF THE | : | |
| TOWN OF KEARNY, PLANNING | : | |
| BOARD OF THE TOWN OF KEARNY, | : | |
| KEARNY-HARRISON, LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants the Town of Kearny ("the Town"), Mayor Alberto G. Santos ("Santos"), the Council of the Town of Kearny ("Town Council") and the Planning Board of the Town of Kearny ("Planning Board") (collectively "Kearny Defendants") to dismiss Plaintiff RLR Investments, LLC's ("Plaintiff") Complaint pursuant to FED. R. CIV. P. 12(b)(1) and (6);and upon motion by Defendant Kearny-Harrison, LLC ("Kearny-Harrison")[1] to dismiss Plaintiff's Complaint, pursuant to FED. R. CIV. P. 12(b)(1) and (6).  After carefully considering the submissions of the parties, and based upon the  following, it is the finding of this Court that Defendants' motions to dismiss are **granted**.

## I.    BACKGROUND

In September 2006, Plaintiff brought suit against the same Defendants named in the instant

---

[1]The Town, Santos, Town Council, Planning Board and Kearny-Harrison will collectively be "Defendants."

action, alleging violations of the Public Use Clause of the United States Constitution and the New Jersey Constitution, a violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, arbitrary and capricious conduct by Defendants and a violation of the New Jersey Eminent Domain Act.  This Court dismissed Plaintiff's first Complaint. See  RLR Invs., LLC v. Town of Kearny, No. 06-4257, 2007 U.S. Dist. LEXIS 44703 (D.N.J. June 18, 2007).

On August 3, 2007, Plaintiff filed a seven count Complaint with this Court.  The Complaint was filed on the heels of the Town's second notice of intent letter seeking permission to execute pre-condemnation investigations and studies.  In the August 3, 2007, Complaint, Plaintiff challenged the implementation and effect of New Jersey's eminent domain statutes.  Specifically, Plaintiff brought the following claims: (1) a facial and as-applied constitutional challenge to N.J.S.A. 40A:12A-8h (Count I); (2) a facial and as-applied constitutional challenge to N.J.S.A. 20:3-16 (Count II); (3) a violation of the Public Use Clause of the United States Constitution and the New Jersey Constitution (Count III); (4) a challenge to Defendants' "authority to condemn" (Count IV); (5) a violation of the Blighted Areas Clause of the New Jersey Constitution (Count V); (6) arbitrary and capricious redevelopment actions (Count VI); and a violation of the New Jersey Eminent Domain Act (Count VII).

Plaintiff is the landowner of property located at 50 Harrison Avenue, Kearny, New Jersey and a real estate holding affiliate of R+L Carriers, Inc. ("R+L").  Plaintiff operates a "less than truckload" ("LTL") business.[2]  Plaintiff claims that the Kearny property at issue is central to its entire northeast

_____

[2]The LTL industry serves the "needs of businesses and individuals that do not require a full-truck load movement of their goods."  LTL carriers pick up shipments from customers and brings these shipments to a centralized city.  Prior to reaching the centralized city, LTL carriers sort, load and combine freight onto outbound trucks at regional "hub" terminals.  For example, freight destined for Texas from Massachusetts, would first go to a "hub" (in this instance Kearny) to be combined with other fright destined for Texas from other areas within the region.  Then, once the freight is at full capacity, trucks are sent to the centralized city for local delivery.

LTL operation because nearly all freight that originates in the Northeast must first pass through the Kearny terminal. Between January 11, 2000, and the filing of the first lawsuit in September 2006, Defendants adopted and effectuated multiple redevelopment resolutions and ordinances for the possible implementation of a development plan that would require the future acquisition of Plaintiff's property. On September 8, 2006, the same day Plaintiff filed its first lawsuit, the Town sent a notice of intent, pursuant to N.J.S.A. 20:3-16 and N.J.S.A. 40A:12A-8h, seeking Plaintiff's permission to conduct preliminary investigations of the property. Litigation delayed this preliminary entry and following the dismissal of the first lawsuit, the Town sent a second notice of intent letter on July 10, 2007. Similar to the first notice of intent, the second letter sought Plaintiff's permission to enter the property and conduct preliminary investigations, including wetland delineation, geotechnical investigations, environmental investigations, surveys, and civil engineering investigations. Defendants sought to commence this preliminary entry on August 6, 2007. On August 3, 2007, Plaintiff sent a letter denying permission. Plaintiff alleges that the preliminary entry, permitted under New Jersey's Eminent Domain Act and Local Redevelopment and Housing Law, is "invasive" and "substantially interfere[s]" with its "use and enjoyment of the property."

By Opinion and Order dated June 25, 2008, this Court granted Defendants' motions to dismiss the Complaint. Six days before the June 25, 2008, Opinion and Order, Plaintiff filed an Amended Complaint providing essentially one new factual contention. Specifically, that the preliminary entry of Plaintiff's property for environmental investigations had taken place. This entry took place pursuant to a January 3, 2008, Court Order of the Superior Court of New Jersey, Law Division. By Order dated August 12, 2008, this Court vacated its June 25, 2008, Opinion and Order to allow the Court to consider Plaintiff's Amended Complaint.

In its August 17, 2007, Amended Complaint Plaintiff brought the following claims: (1) a

-3-

facial and as-applied constitutional challenge to N.J.S.A. 40A:12A-8h (Count I); (2) a facial and as-applied constitutional challenge to N.J.S.A. 20:3-16 (Count II); (3) a violation of the Public Use Clause of the United States Constitution and the New Jersey Constitution (Count III); (4) a challenge to Defendants' "authority to condemn" (Count IV); (5) a violation of the Blighted Areas Clause of the New Jersey Constitution (Count V); (6) a violation of the Due Process Clause of the United States Constitution (Count VI); (7) a violation of the Due Process Clause of the New Jersey Constitution (Count VII); (8) a federal and state claim for declaratory relief regarding pre-condemnation testing (Count VIII); (9) arbitrary and capricious redevelopment actions (Count IX); and (10) a violation of the New Jersey Eminent Domain Act (Count X).

## II.    STANDARD OF REVIEW

### A.    FED. R. CIV. P. 12(b)(6)

When deciding a motion to dismiss pursuant FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998).  In evaluating a Rule 12(b)(6) motion, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents, if the plaintiff's claims are based upon those documents.  Pension Benefit Guar. Corp. V. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

While under the liberal notice pleading standard a party is not required to plead facts sufficient to prove its case, there still must be an underlying claim for relief before the court.  Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir 2004).  Moreover, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse v.

Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). A pleading that offers labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly,550 U.S. 544, 555 (2007).

In Twombly, the Supreme Court established new language for interpreting the pleading standard when it held that a plaintiff was required to plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. The "[f]actual allegations [of the complaint] must be enough to raise a right to relief above the speculative level." Id. at 555. Nonetheless, the Supreme Court specified that there is no heightened standard of fact pleading or requirement to plead specifics. Id. at 570. The Supreme Court explains:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (U.S. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-57, 570 (2007).

**B.     FED. R. CIV. P. 12(b)(1)**

The standard of review for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) depends on whether the motion is based on a facial or factual challenge to subject matter jurisdiction. See Gould Elecs. Inc. V. United States, 220 F.3d 169, 176 (3d Cir. 2000). A facial challenge asserts that the court lacks jurisdiction over a plaintiff's claims on their face. If the defendant's attack is facial, a court must accept as true all allegations in the complaint and draw reasonable inferences in favor of the plaintiff. Mortensen v. Frist Fed. Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

Furthermore, a court "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." Liu v. Gonzales, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007).

A factual challenge attacks the existence of a court's subject matter jurisdiction apart from any of the pleadings. See Mortenson v. First Fed. Sav & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). When considering a factual challenge, "no presumpti[on of] truthfulness attaches to a plaintiff's allegations." Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1070 (D.N.J.1995) (citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction - type motion need not be limited; conflicting written and oral evidence may be considered and a court may 'decide for itself the factual issues which determine jurisdiction." Id. (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.) Cert. denied, 454 U.S. 897 (1981)). "When resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff." Med. Soc'y of N.J. v. Herr, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing Gould Elecs. Inc. v. U.S., 220 F.3d 169, 176, 178 (3d Cir. 2000)). Nonetheless, "[w]here an attack on jurisdiction implicates the merits of a plaintiff's Federal cause of action, the district court's role in judging the facts may be more limited." Martinez, 875 F. Supp. at 1071 (citing Williamson, 645 F.2d at 413 n.6). Regardless of whether the challenge is facial or factual, the plaintiff bears the burden of persuasion. Mortensen, 549 F.2d at 891.

## III.   DISCUSSION

### A. *Res Judicata*

Defendants argue that *res judicata* bars Plaintiff's Complaint because the instant Complaint is virtually identical to the one dismissed by this Court on June 18, 2007. Central to the Court's role

of resolving litigation in a conclusive manner and thereby closing the door to the possibility of inconsistent decisions, *res judicata* endeavors to conserve judicial resources, foster reliance on judicial action and avoid the expense and vexation that accompanies multiple lawsuits.  See EEOC v. United States Steel Corp., 921 F.2d 489, 492 (3d Cir. 1990).[3]  Further, Defendants assert that the New Jersey Entire Controversy Doctrine bars this subsequent litigation.  See N.J.R. 4:30A.  The entire controversy doctrine seeks to cement the legal adjudication of related claims and defenses regarding an underlying controversy, in one court, at one time.  See Venuto v. Witco Corp., 117 F.3d 754, 761 (3d Cir. 1997). The party "sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action."  See DiTrolio v. Antiles, 142 N.J. 253, 273 (1995)(citing Cafferata v. Peyser, 251 N.J. Super. 256, 261 (App. Div. 1991)).  When applying *res judicata*, the preclusion laws of the issuing court determine whether state or federal preclusion laws apply to the subsequent litigation.  Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 135-36 (3d Cir. 1999); see also Watkins v. Resorts Int'l Hotel and Casino, Inc., 124 N.J. 398 (1991).

The entire controversy doctrine is stretched to its breaking point when no previous litigation has occurred within a New Jersey state court forum. Fioriglio v. City of Atlantic City, 963 F. Supp. 415, 422 (D.N.J. 1997).  Defendants seek to apply the entire controversy doctrine because it encompasses a broader reach than traditional *res judicata*.  See Id. at 423 (noting that under the second step of an Erie[4] analysis, the action is "outcome-determinative" because if New Jersey law

---

[3]The doctrine of *res judicata* is often construed to apply to both claim and issue preclusion.  Defendants assert both preclusion doctrines, however, claim preclusion is the concept that must be applied in the present action.

[4]See generally Erie R.R. v. Tompkins, 304 U.S. 64 (U.S. 1938).

is applied, the action would be barred under the entire controversy doctrine, whereas application of federal preclusion law would allow the action to go forward).  Since the first action was decided by this Court, federal *res judicata* and not the New Jersey entire controversy doctrine applies.  In order to assert a claim for federal preclusion, the following three elements must be met: (1) final adjudication on the merits; (2) same claim; and (3) same parties or privies.  Sutton v. Sutton, 71 F. Supp. 2d 383, 389 (D.N.J. 1999), aff'd 216 F.3d 1077 (3d Cir. 2000), cert. denied, 531 U.S. 928 (citing EEOC v. United States Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990)).

In the first action, this Court dismissed Plaintiff's federal claims for a lack of subject matter jurisdiction.  Id. at *16.  Lack of subject matter jurisdiction is not an adjudication on the merits. Sutton, 71 F. Supp. 2d at 383 (finding that three previous federal law suits dismissed for lack of subject matter jurisdiction did not trigger principles of *res judicata*); see FED. R. CIV. P. 41(b). While this Court is apprehensive about allowing Plaintiff a second bite at the apple, because *res judicata* principles do not bar this action, jurisprudence requires fairness to overstep efficiency.

### B.  Constitutional Challenges

The Fifth Amendment prohibits the taking of private property without just compensation. U.S. Const. amend. V.  This property protection is applicable to the states via the Fourteenth Amendment.  Chicago B&Q R.R. Co. v. Chicago, 166 U.S. 226, 239 (1897).  Although the power of condemnation "involves the exercise of one of the most awesome powers of government... [such powers] must always be exercised in the public interest."  Harrison Redevelopment Agency v. DeRose, 398 N.J. Super. 361, 402 (App. Div. 2008) (citing City of Atlantic City v. Cynwood Invs., 148 N.J. 55, 73 (1997)).  Plaintiff asserts both as-applied and facial constitutional challenges to

N.J.S.A. 40A:12A-8(h)[5] and N.J.S.A. 20:3-16[6].  Plaintiffs argue that Defendants' preliminary entry onto the subject property amounts to a physical invasion and occupation of private property that substantially interfered with Defendants' rights as the property owner.

Nearly identical, both statutes authorize the prospective condemnor and/or redeveloper to gain preliminary entry onto the subject property to conduct investigations, surveys, tests, soundings, soil borings and appraisals.  See N.J.S.A. 40A:12A-8(h) and N.J.S.A. 20:3-16.  As Harrison indicated, there is a strong "legislative desire that the two statutes be applied to a particular redevelopment initiative in a coordinated and harmonized fashion."  398 N.J. Super. at 397.  Under the principle of *in pari materia*, statutes addressing the same subject matter should generally be read as if they were one law.  Lafferty v. Gito St. Riel, 495 F.3d 72, 81 (3d Cir. 2007).  As such, this Court will address the two statutes in accordance with one another.

As an initial matter, this Court must determine whether Plaintiff's constitutional claims are justiciable under the ripeness doctrine.  RLR, 2007 U.S. Dist LEXIS 44703, at *7.  Ripeness is a justiciability doctrine that seeks to avoid deciding legal issues that are not distinctively concrete for decision.  United States ex rel. Ricketts v. Lightcap, 567 F.2d 1226, 1232 (3d Cir. 1977).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated,

---

[5]N.J.S.A. § 40A:12A-8h of the Local Redevelopment and Housing Law provides: "Upon adoption of a redevelopment plan...the municipality or redevelopment entity designated by the governing body may proceed with the clearance, planning, development and redevelopment of the area designated in the plan.  In order to carry out and effectuate the purposes of this act and the terms of the redevelopment plan, the municipality or designated redevelopment entity may: Enter upon any building or property in the redevelopment area in order to conduct investigations or make surveys, soundings or test soil borings necessary to carry out the purposes of the act."

[6]N.J.S.A. § 20:3-16 of the Eminent Domain Act provides: "Prior to commencement of any action, a prospective condemnor and its employees and agents, during reasonable business hours, may enter upon any property which it has authority to condemn for the purpose of making studies, surveys, tests, soundings, borings and appraisals, provided notice of the intended entry is sent to the owner of the occupant of the property by certified mail at least 10 days prior thereto."

or indeed may not occur at all." Heir v. Del. River Port Auth., 218 F. Supp. 2d 627, 634 (D.N.J. 2002)(quoting Texas v. United States, 523 U.S. 296, 299 (1998)).

In reviewing whether an as-applied Fifth Amendment just compensation takings claim is ripe, a court must consider two factors: (1) that a final decision has been reached regarding the property ("finality prong"); and (2) that the plaintiff has exhausted state just compensation procedures ("exhaustion prong"). Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 193 (1985). The finality prong concerns whether a "definitive position" has been made that may inflict the property owner with deprivation, while the exhaustion prong requires an injured party to seek a state forum to "review [] an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." Id.

The finality prong does not apply to a facial attack on an ordinance or statute. See County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 164 (3d Cir. 2006). "Facial challenges to regulation are generally ripe the moment the challenged regulation or ordinance is passed, but face an uphill battle, since it is difficult to demonstrate that mere enactment of a piece of legislation deprived [the owner] of economically viable use of [his] property." County Concrete Corp., 442 F.3d at 164 (citing Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 736 (1997)).

In order to assert a claim under the Takings Clause of the Fifth Amendment ripe for federal adjudication, the procedure is the same "whether it is a facial or as-applied claim, 'if a State provides an adequate procedure for seeking just compensation, the plaintiff must have exhausted this procedure.'" Miles v. Twp. of Barnegat, No. 05-1661, 2008 U.S. Dist. LEXIS 839, *15 (D.N.J. Jan. 7, 2008) (quoting County Concrete Corp., 442 F.3d at 167-68). The Takings Clause is "designed not to limit the governmental interference with property rights *per se*, but rather to secure

compensation in the event of otherwise proper interference amounting to a taking." <u>CBS Outdoor</u>, 2007 U.S. Dist. LEXIS 64155 at *28 (citing <u>Lingle v. Chevron U.S.A. Inc</u>., 544 U.S. 528, 537 (2005)).

### 1. Facial Challenge

With respect to its facial challenge, Plaintiff argues that a state statute cannot authorize an entry onto private property for investigations, surveys, and testing to carry out the purpose of a development plan because this amounts to an unconstitutional taking.

Plaintiff's constitutional challenge to N.J.S.A. 40A:12A-8(h) and N.J.S.A. 20:3-16 is in part predicated upon an incorrect interpretation of several condemnation cases. These cases affirm that "government authorize[d] physical occupation of property" is a taking. <u>Yee v. City of Escondido, Cal.</u>, 503 U.S. 519, 522 (1992). It is equally clear that "when [a] physical intrusion reaches the extreme form of a permanent physical occupation, a taking has occurred." <u>Loretto v. Teleprompter</u>, 458 U.S. 419, 426 (1982). These cases address intrusions that are permanent rather than authorized entries that are temporary, like the entry in question here.

Plaintiff turns to the regulatory takings cases <u>Lucas v. South Caroline Coastal Council</u> and <u>Palazzolo v. Rhode Island</u> to assert that it does not matter how minimal a government intrusion is because it is the character of the government intrusion and not the duration that is important. <u>Lucas</u>, 505 U.S. 1003, 1015 (1992); <u>Palazzolo</u>, 533 U.S. 606, 617 (2001). While <u>Lucas</u> and <u>Palazzolo</u> do hold that minimal intrusions can constitute takings, these cases address regulations "that prohibit all economically beneficial use of land." <u>Lucas</u>, 505 U.S. at 1029; <u>Palazzolo</u>, 533 U.S. at 617. In Lucas regulation required that a property owner allow a cable television company to put a small box on the subject property. <u>Lucas</u>, 505 U.S. at 1008. The portion of the subject property affected was small

but the property owner was denied all economic use of that area. This is not relevant to the situation under consideration. Lucas and Palazzolo do not stand for the proposition that a temporary entry to perform investigations constitute a taking. Plaintiff cites an environmental case that is more on point. In the environmental case, it was held that monitoring wells installed by the EPA constituted a taking even though the wells were not permanent. John R. Sand and Gravel Co. v. U.S., 57 Fed.Cl. 182, 189 (Fed. Cir. 2003). Integral to the Federal Circuit's holding in this case was the Court's finding that there was a "total occupation." Id. Although the occupation was not permanent it was for a substantial amount of time and the Gravel Co. Court recognized that there was a permanency to the occupation amounting to a taking.

In further support of its position, Plaintiff turns to a series of cases from other jurisdictions. In Missouri Highway & Transp. Com'n v. Eilers, the Missouri Appellate Court found:

> Although the soil survey is not an intrusion of an overwhelming magnitude, it is still an intrusion and interference with Eilers' rights as a private landowner. A soil survey conducted without Eilers' consent subverts his right to use and enjoy his property in fee simple absolute. This is not constitutionally permissible. Accordingly, the soil survey amounts to a "taking" and the Commission may not conduct the soil survey until it receives Eilers' consent or initiates judicial proceedings and pays the damages for a temporary easement before entering the land.

> While it may be burdensome for the Commission to condemn a temporary easement for a soil survey and then later condemn the entire tract for the highway, the constitutional mandate that property not be taken or disturbed without prior compensation, and the landowner's right to freely use his land supersede any efficiency concerns. In addition, the Commission has in the past apparently obtained landowners' consent to conduct soil surveys.

729 S.W.2d 471, 474 (Mo. App. 1987). Plaintiff also cites an Illinois case that found that subsurface investigations, like soil borings and geologic studies, do substantially interfere with a landowners' property rights. County of Kane v. Elmhurst Nat'l Bank, 443 N.E.2d 1149, 1152-54 (1982). While these cases support Plaintiff's position, they differ greatly from the seminal cases cited by Plaintiff at the outset of its argument. The prevailing position regarding physical takings is that a taking is

a permanent physical occupation of land.  Loretto, 458 U.S. at 246.

This notwithstanding, if the Court were to find that the entry did constitute a taking, the taking would not be illegal *pre se* because it is predicated on development plans that presumably follow New Jersey condemnation law.  The real issue raised by Plaintiff is what compensation is warranted which is essentially an as applied claim. This points the Court to the fact that Plaintiff has not followed New Jersey procedures for having a taking recognized and compensated.

The question before this Court is not ripe for consideration.  Plaintiff should have first brought the issue to a New Jersey Court.  Indeed it has been established that "claims that are based not on lack of just compensation, but rather on an unlawful taking, and which have not been previously brought before the state court are[] premature." ISP Envtl. Servs. v. City of Linden, 2007 U.S. Dist. LEXIS 32614, *19 (D.N.J. May 3, 2007) (citing Taylor Investment LTD. v. Upper Darby Township, 983 F.2d 1285, 1292-95 (3d Cir. 1993)); See also Williamson, 473 U.S. at 186, 194 (holding that taking claims are not ripe for federal review until there has been a final administrative decision and a condemnation); San Remo Hotel v. City and County of San Francisco, Calif., 545 U.S. 323, 346-47 (2005) ("a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue").

Defendants sought an order to show cause in New Jersey Superior Court.  The Superior Court Ordered Plaintiff to allow Defendants to enter the property.  Plaintiff brought an emergent appeal to stay the Superior Court's Order.  The New Jersey Appellate Division declined to address the merits of Plaintiff's case and dismissed the appeal as moot.  Since the issue of whether an entry undertaken pursuant to N.J.S.A. 40A:12A-8(h) and N.J.S.A. 20:3-16 is a taking, and specifically

-13-

whether Defendants' entry constitutes a taking has not been addressed by a New Jersey State Court, the issue is not ripe for determination by this Court. ISP Envtl. Servs., 2007 U.S. Dist. LEXIS 32614 at *19 (citing Taylor Investment LTD, 983 F.2d at 1292-95).

Moreover, Plaintiff has not demonstrated that it "file[d] a notice of constitutional question stating the question and identifying the paper that raises it" as required by Fed. R. Civ. P. 5.1 where "neither the state, nor any of its agencies, officers, or employees is a party" to an action challenging the constitutionality of a state statute. Citizens for a Better Lawnside, Inc. v. Bryant, 2006 U.S. Dist. LEXIS 93235, *23-24 (D.N.J. Dec. 22, 2006).

### 2. As-Applied Challenge

#### i. Takings Clause

With respect to Plaintiff's as-applied claim, the Fifth Amendment prohibits the taking of property "without just compensation" and not the mere "taking," Plaintiff must first exhaust state procedures by seeking compensation in order to effectuate a ripe takings claim pursuant to the Fifth Amendment. See County Concrete Corp., 442 F.3d at 168 (citing Williamson, 473 U.S. at 194 -95, n13). As long as a reasonable provision exists at the time of the taking to obtain just compensation, an aggrieved party must exhaust those procedures. Williamson, 473 U.S. at 194. Failure to satisfy the exhaustion doctrine automatically results in a failure to satisfy the finality prong of a takings claim. See Miles v. Twp. of Barnegat, 2008 U.S. Dist. LEXIS 839, 15 (D.N.J. Jan. 7, 2008). Since Plaintiff has not been denied just compensation, Plaintiff's as-applied claim must fail on ripeness grounds.

#### ii. Public Use Clause

Plaintiff seeks to circumvent state adjudicatory procedures by invoking the public use clause.

As discussed above, failure to exhaust state remedies renders a takings claim premature.  An exception to the exhaustion prong is the taking of property for private purposes.  Edlin Ltd. v. City of Jersey City, 2008 U.S. Dist. LEXIS 41118, 18 (D.N.J. May 23, 2008).

Plaintiff specifically pleads in its Amended Complaint that the entering of its property to perform environmental testing constitutes a taking in and of itself.  Plaintiff further pleads that this taking was for the "sole purpose of conferring a private benefit on a private developer."  This allegation amounts to a bald assertion and is a misstatement of the law and facts.

A taking is constitutional if "the uses offered to justify it are palpably without reasonable foundation, such as if (1) the sole purpose of the taking is to transfer property to a private party, or (2) the asserted purpose of the taking is a mere pretext for an actual purpose to bestow a private benefit."  CBS Outdoor, 2007 U.S. Dist. LEXIS 64155 at *43 (citations omitted).

Assuming that Defendants' entry onto Plaintiff's property was a taking, Plaintiff's argument fails because the purpose of the entry was public in nature.  Defendants entered Plaintiff's property to ensure that the property is viable for the public use for which it might be condemned.  This is in furtherance of the redevelopment plan which Defendants proffer constitutes a public use.  Plaintiff responds to Defendants' public use contention by asserting that a viable business is operated on the subject property and hence the property is not blighted.  This however, does not in and of itself mean that the area cannot be deemed in need of redevelopment under N.J.S.A. 40A:12A-5.  To the extent Plaintiff is challenging the validity of the blight designation, this is an issue involving New Jersey law that will affect the activities of New Jersey government.  More to the point, as discussed above, matters involving the legality of a taking in New Jersey should first be addressed by the New Jersey Courts.  ISP Envtl. Servs., 2007 U.S. Dist. LEXIS 32614 at *19 (citing Taylor Investment LTD, 983

F.2d at 1292-95).

Additionally, Plaintiff's public use arguments question the validity of Defendants' redevelopment plan and the potential future condemnation of the subject property. As Plaintiff does not and cannot contend that there has been a general taking of its property beyond the preliminary entry, the ripeness discussion in this Opinion also applies to this aspect of the Complaint.

Since Plaintiff's constitutional challenges are not ripe, and Plaintiff has not provided the requisite notice to challenge the constitutionality of a state statute, Plaintiff's constitutional challenges are **dismissed**.

### C.  Authority to Condemn

Plaintiff asserts that Defendants do not have the authority to condemn the property at issue because Defendants have not satisfied all of the requirements of the Takings Clause requirements, including public use.  See N.J.S.A. 20:3-16.  For the ripeness reasons stated above, the Court does not and can not reach the merits of this issue.  Accordingly, Plaintiff's claims challenging Defendants' authority to condemn are **dismissed**.

### D.  State Law Claims

The Court's authority over Plaintiff's state law claims was based on supplemental jurisdiction as provided for in 28 U.S.C. § 1367(c)(3).  28 U.S.C. § 1367(c)(3) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Supplemental jurisdiction is predicated upon a federal court first having original jurisdiction over

related claims.  Id.  When a court loses original jurisdiction it is not automatic that the court waives supplemental jurisdiction.  See Figueroa v. Buccaneer Hotel, 188 F.3d 172, 181 (3d Cir. 1999). Indeed, the Third Circuit has expressed that it "prefer[s that a] district court []set forth its basis for dismissing state claims on a jurisdictional basis."  Id. (referring to Sparks v. Hershey, 661 F.2d 30, 33 (3d Cir. 1981).  This, however, is a preference and not a requirement.  Id.

The Court dismisses Plaintiff's state claims for lack of jurisdiction because all of Plaintiff's federal claims have been dismissed.  28 U.S.C. § 1367(c)(3).  Stated another way, the Court declines to exercise supplemental jurisdiction over Plaintiff's state claims because there remains no claims over which this Court has original jurisdiction.  Declining supplemental jurisdiction after all federal claims are dismissed is appropriate where there is neither apparent unfairness nor any overriding judicial interest.  See Figueroa v. Buccaneer Hotel, 188 F.3d 172, 181 (3d Cir. 1999).  The Court finds no such judicial interest or unfairness here.  Therefore, Plaintiff's state claims are **dismissed** for lack of supplemental jurisdiction.

## IV.   CONCLUSION

For the reasons stated, this Court finds that Defendants' motions to dismiss are **granted**.  An appropriate Order accompanies this Opinion.


S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.


Date:   June 29, 2009
Orig.:  Clerk
cc:     Counsel of Record
        The Honorable Mark Falk, U.S.M.J.
        File